## SUPREME COURT.

GEORGE J. HALL AND OTHERS agt. JOSEPH PARTRIDGE AND
OTHERS.

In an action for *partition and sale* of real estate, it is not necessary to *adver-
tise* for persons having general liens by judgment or decree, to present their
claims to a referee, &c., in order to render the sale regular and valid.  (*See
Laws of* 1830, *ch.* 320; 12 *Wend.* 269.)  The advertisement and reference
are only intended as a means of cutting off certain general liens.  If there are
none, there is no use of the advertisement; and if the parties to the suit know
there are none, there is no reason why they should be subjected to the expense
and delay of an advertisement and reference that must amount to nothing.
If there are such liens in fact, the purchaser, on examining his title, will dis-
cover them, and decline to take the title until the liens are discharged.

As, however, judgments and decrees do not cease to be a lien as against *heirs at law* at the end of ten years, the parties to such an action who choose to omit this ordinary advertisement should produce, at their own cost, regular searches for all judgments and decrees for at least *twenty years.*

The administrator of the deceased, or any of his creditors, may obtain a decree of the surrogate for the sale of the real estate at any time within three years after letters of administration are granted, (2 *R. S.* 100, § 1,) in order to pay the debts of the deceased; and a previous sale of the real estate, in partition by the heirs at law, by an order of the court, does not divest the surrogate of this power to decree a sale under the aforesaid statute.

A *purchaser* under a partition sale by the heirs at law is not bound to take an *affidavit* of the administrator or any other person, that there are no debts of the deceased; he is entitled to have the fact made out beyond all reasonable doubt that there are no debts or liabilities of any kind of the deceased, for which there is any risk that the property may be sold, whether those debts are his own, or as surety, or contingent.

*New-York Special Term, August,* 1853.

MITCHELL, Justice.   William Witsel died in this city within one year since, and left a large real estate and about $3,000 in personal estate.   Shortly after his death an action was commenced for the partition of his real estate, and before the year was out it was sold under a judgment obtained in that action. George H. Peck became the purchaser of one of the lots, and objected to complete his purchase.   Most of the objections were on account of seeming irregularities in the action; those are now cured, and their previous existence can have no effect except on the question of costs.   Three objections are not of this class.   One is, that there is a mortgage actually on the premises, which is still in force; and that although it is more than twenty years old, it has been ratified by the ancestor by his paying part of the principal.   The plaintiffs' attorney consents that an order be made that that mortgage be paid and satisfied of record: such an order may be made, and will remove that objection.

The second is, that there was no advertisement for persons having general liens by judgment or decree to present their claims to the referee.   The counsel for the purchaser insists that without such advertisement there can be no valid order of sale.   The question, whether an order would be regular in such case, came up before the chancellor in *Wilde agt. Jenkins,* (4 *Paige,* 481, *August,* 1834,) and he said that " as the effect

of a sale in partition is to divest the holders of such liens of all claim upon the estate itself, such a reference cannot be dispensed with in any case;" and added, "it must therefore be referred to a master in the county of Columbia." (*See p.* 492.) The chancellor was not called on to pass upon the question, whether such an advertisement was essential to the validity of the sale, and did not pass upon it; but only, whether, as a rule of practice, it would be proper to insist on such advertisement before the court would order a sale. Nor does it appear that the question was discussed before him, whether it might not be proper to omit the advertisement, trusting that there were in fact no such liens. This last question was discussed with ability before the supreme court in the following February, in *Gardner agt. Luke,* (12 *Wend.* 269;) and the court held, that the order for sale might be made without a reference as to such liens, and without the advertisement for them. That case shows that the revised statutes, as first enacted, provided that before the order for the sale should be made, this order of reference should be made; but that the act of 1830, *ch.* 320, amended this section of the revised statutes, so that the order should be made *on the motion of either party;* and the court held, that this qualified the law so that when neither party moved for the reference it was unnecessary, and the order of sale could be made without it.

This comports too with the intention of the law. The reference and the advertisement were only intended as a means of cutting off certain general liens. If there were none such there was no use of the advertisement; and if the parties to the suit knew there were none, there was no reason why they should be subjected to the expense and delay of a reference and advertisement, which must end in nothing. If the advertisement was omitted, and there were such liens in fact, the purchaser, on examining the title, would discover them, and decline to take the title until the liens were discharged, and so no one would be injured. It would be a dangerous and extraordinary decision to hold that the decree of sale was a nullity when there was no advertisement, when it should appear

that no one could possibly be injured by the omission, and that, in fact, there were no such creditors by judgment or decree. The rule adopted by the supreme court is the sound and conservative one, and probably would have been adopted by the chancellor, if the question had been presented as one of title.

As, however, judgments and decrees do not cease to be a lien as against heirs at law at the end of ten years, the parties to a suit who choose to omit this ordinary advertisement should produce, at their own cost, regular searches for all judgments and decrees for at least twenty years. That must be done in this case.

The third objection is, that the administrator of the deceased, or any of his creditors, may obtain a decree of the surrogate for the sale of the real estate at any time within three years after letters of administration were granted, (2 *R. S.* 100, § 1,) in order to pay the debts of the deceased.

The plaintiff's attorney insists that the sale by order of this court would supersede the power of the surrogate to order a sale, and that the purchaser paying his money would be a *bona fide* purchaser, and would be protected; and that as the ancestor could sell without his general creditors having a lien on his lands, the heir can sell in the same way; that death (as he expresses it) gives no additional equity to the creditors. It is not an equity that these creditors would set up, but a *legal* right given to them by statute to enforce a sale for the payment of their debts due to them—they resting therefor not on a mere equity, but on a legal right; those who could not avoid that legal right would gain nothing by setting up a mere equity against them. They claim, too, by a title paramount to that of the heir; the heir claims under the ancestor, without any valuable consideration, the creditors claim not under the ancestor, but through the power which the law—a higher power than the ancestor—gives them over the lands of the ancestor, even when they pass to the heir. The heir, therefore, takes the lands subject to the execution of this higher power.

That lands sold by the heirs may afterward be sold by order of the surrogate, appears from the section directing such lands, when

sold by the surrogate, not to be sold until the lands remaining in the hands of the heirs have been first sold. (2 *R. S.* 103, § 20.)

Vice-chancellor McCoun, in *Matthews agt. Matthews*, (1 *Edwards*, 565,) refused to allow a decree of sale in a partition suit within a period less than three years after letters of administration were granted, and said, (*p.* 571,) that the legislature " intended, whenever such power should be exercised, and a sale become necessary under the authority of the surrogate, to make it overreach and supersede any sale made or *procured* by the heir or devisee within the three years; and also considered such sales not made in good faith, while debts of the ancestor remained, and a possibility existed of a deficiency of personal assets."

It is enough to say, that a purchaser should not be compelled to take a title in opposition to this decision.

The plaintiffs' attorney, to show that there are no such debts of the deceased, produces the affidavit of the administrator. The purchaser is not to depend on any affidavit : he is entitled to have the fact made out beyond all reasonable doubt, that there are no debts or liabilities of any kind of the deceased for which there is any risk that the property may be sold—whether those debts are his own, or as surety, or contingent. It may be that Mr. Witsel was so methodical a man as to keep an account of all his liabilities of every kind, or that some disinterested person had the agency of his affairs, and such a thorough knowledge of them that there could be no doubt what he owed or might be liable for. Then the purchaser would incur no risk, if all those debts and liabilities are first discharged. Risk greater than this the purchaser is not bound to incur.

A reference therefore should be taken to Judge Mason, who conducted the sale, to ascertain whether, consistently with these views, a perfect title, free from doubt, can be given to the purchaser : if it cannot be, the purchaser is to be discharged and repaid his ten per cent. with interest. At all events, he is to have his costs on this motion, $10. The question of costs on the reference is reserved. Either party can bring up the matter before the court again, after the hearing before the referee.